UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JESSICA E. ALBORNOZ,<br><br>Plaintiff,<br><br>v.<br><br>WAL-MART ASSOCIATES, INC., et al,<br><br>Defendants. | Case No. 1:22-cv-01229-JLT-CDB<br><br>ORDER RE: DISCOVERY DISPUTES<br><br>(Doc. 53) |

Currently before the Court is a discovery dispute that the parties have agreed to submit to the Court for adjudication through the Court's informal discovery dispute procedure.

**Background**

This is an employment case in which Plaintiff Jessica E. Albornoz alleges she was unlawfully terminated by former employers Defendants Wal-Mart Associates, Inc., and Walmart Inc. (collectively, "Wal-Mart") effective May 12, 2022. (First Amended Complaint ["FAC"], ¶¶ 8, 12; Doc 2 at Ex. A). Plaintiff initiated her action in California Superior Court, County of Kern, with the filing of a complaint on August 2, 2022, followed by the filing of the operative FAC some weeks later. (*Id.*). In the FAC, Plaintiff alleges that after working for Wal-Mart for approximately six years, she was placed on intermittent medical leave in March and April 2022. Thereafter, on May 16, 2022, she received notice from Wal-Mart of her termination. (*Id.* at ¶¶ 8-

1   12).  Wal-Mart removed the case to this Court on September 27, 2022.  (Doc. 1).

2   On August 11, 2023, counsel for Plaintiff contacted the Court to report that the parties'
3   good faith efforts to resolve an unidentified discovery dispute had been unsuccessful and that
4   counsel for both parties requested a hearing.  (Doc. 52).  At the Court's direction, on August 16,
5   2023, the parties filed a joint informal discovery dispute letter brief in which they outlined
6   outstanding discovery disputes for which they seek a ruling from the Court.  (Doc. 53).

7   On August 18, 2023, the Court convened with the parties off the record to address the
8   discovery disputes.  (Doc. 55).  Alisa Goukasian appeared on behalf of Plaintiff, and Robert C.
9   Rodriguez appeared on behalf of Wal-Mart.  At the beginning of the conference, the parties
10  agreed to resolution of the identified discovery disputes outside the Local Rule 251 formal
11  parameters, agreed to proceed without record, and agreed to abide by an order of the Court after
12  the conference resolving the disputes.

13  As the parties mutually agreed during the conference to resolution of one of the discovery
14  disputes, this Order addresses the three remaining disputed issues:[1] (1) whether Plaintiff should be
15  permitted to reopen the depositions of Wal-Mart employees Jason Salas and Amber Failla to
16  examine those witnesses regarding third-party documents Plaintiff only received after their
17  depositions were completed; (2) whether counsel for Wal-Mart properly relied on the attorney-
18  client privilege in instructing a witness not to answer a question as to whether he searched for call
19  records documenting his contacts with Plaintiff; and (3) whether and the extent to which Plaintiff
20  may seek additional discovery from Wal-Mart concerning its ethics investigation pertaining to
21  Mr. Salas and Ms. Failla.

22  **Issue #1:  Plaintiff's Request to Reopen Depositions**

23  In December 2022, Plaintiff propounded written discovery seeking from Wal-Mart
24  documents relating to its training and procedures on its discrimination, harassment and reasonable
25  accommodation policies.  (Doc. 53 at 2).  In or about April 2023, Wal-Mart produced to Plaintiff
26  responsive materials, including an email among Wal-Mart employees that identified hyperlinks to

---

[1] The parties mutually agreed without Court involvement to resolve the discovery dispute involving Mr. Salas' phone and email information.

certain videos.[2] (Doc. 45 at 3). When Plaintiff requested Wal-Mart produce the videos, Wal-Mart replied that the videos were in the custody and control of a third-party (Sedgwick) and not of Wal-Mart. (*Id*.). Following this, counsel for Plaintiff served a document subpoena on Sedgwick, and after receiving an initial production from Sedgwick on or about June 14, 2023, served a second document subpoena seeking the videos. (*Id*.; Doc. 53 at 5). Around this same time, on June 6, 2023, the Court granted the parties' request for a 60-day extension of the period for taking nonexpert discovery, setting nonexpert discovery to close on August 19, 2023. (Doc. 42).[3]

On June 29 and June 30, 2023, Plaintiff took the depositions of the two Wal-Mart witnesses involved in the decision to terminate Plaintiff's employment (Mr. Salas and Ms. Failla). Thereafter, Wal-Mart obtained from Sedgwick the videos that Plaintiff had requested and produced them to Plaintiff on July 13, 2023. (Doc. 53 at 5). Plaintiff now seeks to reopen these two depositions to examine the deponents about the after-acquired videos.

"In the absence of a stipulation, a party must obtain leave from the court to re-open a deposition." *Bookhamer v. Sunbeam Prods. Inc.*, No. C 09-6027 EMC (DMR), 2012 WL 5188302, at *2 (N.D. Cal. Oct. 19, 2012) (citing Fed. R. Civ. P. 30(a)(2)(A) and *Couch v. Wan*, No. 08–1621, 2012 WL 4433470, at *3 (E. D. Cal. Sept. 24, 2012)). "Without a showing of need or good reason, courts generally will not require a deponent's reopened deposition." *Couch*, 2012 WL 4433470, at *3 (citation omitted). "Reopened depositions are disfavored, except in certain circumstances, such as, long passage of time with new evidence or new theories added to the complaint." *Id.* (citing *Graebner v. James River Corp*., 130 F.R.D. 440, 441 (N.D.Cal.1990)). "Courts will not find good need if: (i) the additional deposition is unreasonably cumulative or the information can be obtained from some other source that is less burdensome; (ii) the party had ample time to obtain the information through discovery; or (iii) the burden outweighs the likely benefit." *Acosta v. Austin Elec. Servs. LLC*, No. CV-16-02737-PHX-ROS, 2018 WL 5722713, at

---

[2] The emails are Bates stamped WM-ALBORNOZ000790 and -0968 and were filed under seal in connection with the Court's earlier resolution of a related discovery dispute. *See* Doc. 59.

[3] On the parties' stipulated request, the Court subsequently extended nonexpert discovery to October 3, 2023, for the limited purpose of completing depositions of Plaintiff and another witness. (Docs. 57, 58).

*1 (D. Ariz. Nov. 1, 2018) (citing *Bookhamer*, 2012 WL 5188302, at *2).

Here, at the time Plaintiff took the two subject depositions, she was aware of Wal-Mart's position that it did not have possession, custody or control of the requested Sedgwick videos. Indeed, three days prior to the first deposition, counsel for Plaintiff contacted the Court to schedule an informal discovery dispute conference to address the discoverability of the videos. (Doc. 43). Additionally, Plaintiff had served document subpoenas on Sedgwick to obtain the videos. Ultimately, the Court agreed with Wal-Mart that because it did not have the videos in its possession, it had no discovery obligation to produce them. (Doc. 48).

In light of this background – and given the fact that nonexpert discovery did not close until August 18, 2023 – Plaintiff has offered no explanation either in her joint discovery dispute report or during the discovery dispute conference why she did not delay the subject depositions until after the Court ruled on the discoverability of or she otherwise obtained the Sedgwick videos for use at the depositions. In the joint discovery dispute report, Wal-Mart represented that Plaintiff "insisted" on conducting the depositions before July 1, 2023 (Doc. 53 at 5) and Plaintiff did not contest this during the conference. Under these circumstances, good cause does not exist to reopen depositions for the purpose of examining the deponents about documents received after an earlier deposition. *See, e.g.*, *E.E.O.C. v. Prod. Fabricators Inc.*, 285 F.R.D. 418, 423 (D. Minn. 2012) (declining to reopen depositions where defendants chose to depose plaintiff "early in the discovery period, and in spite of the ongoing dispute about the production of various documents, ... knowing full well that the eventual production of such documents might produce new information that Defendants might wish to ask ... about"); *Eaton Corp. v. Weeks*, No. 13-12392, 2014 WL 700466, at *3 (E.D. Mich. 2014) ("the Court may deny leave to conduct a second deposition of the witness even if relevant documents are produced subsequent to the deposition if the party taking the deposition ... chose to conduct the deposition prior to the completion of document discovery") (citations omitted); *Botell v. United States*, No. 2:11-cv-1545 GEB, 2013 WL 360410, at *8-9 (E.D. Cal. Jan. 29, 2013) (finding good cause did not exist to reopen depositions where plaintiffs chose to take the depositions early in the litigation, before they obtained documents they later wished to examine the deponents about); *Couch*, 2012 WL

4

4433470, at *4 (denying request to reopen deposition where requesting parted "fail[ed] to demonstrate an absence of ample opportunity or likely benefit to warrant reopening" the deposition).[4]

Because Plaintiff had ample time to obtain the videos through discovery prior to the taking of the depositions, the Court does not find good cause to reopen the depositions. *Bookhamer*, 2012 WL 5188302, at *2 (quoting Fed. R. Civ. P. 26(b)(2)(C)).

**Issue #2:  Wal-Mart's Reliance on Privileges in Instructing a Deponent to Not Answer**

During the deposition of a witness who reportedly was involved in terminating Plaintiff's employment with Wal-Mart (Mr. Salas), Plaintiff attempted to elicit information that would either corroborate or cast in doubt the witness's claim he called Plaintiff prior to her termination, potentially as required by Wal-Mart's procedures when an employee seeks to take medical leave. (Doc. 53 at 2, 4).  In response to Plaintiff's question whether he searched for call records, counsel for Wal-Mart instructed Mr. Salas not to answer based on attorney-client privilege and work product privilege.  (*Id.* at 7).

Wal-Mart argues that had Mr. Salas answered Plaintiff's question, the answer inevitably would have revealed either protected work product or a privileged communications between the deponent and counsel concerning the scope of documents the witness was directed by counsel to search for.  Because answering a question of this type does not necessarily implicate protected communications or work product, a deponent generally cannot refuse to describe what documents he searched for and how he searched for them.  *See Auris Health, Inc. v. Gajera*, No. 21-cv-05337-TLT (SK), 2022 WL 18927429, at *2 (N.D. Cal. Oct. 18, 2022) ("The people who were involved in the search can explain what terms they used and what files they searched, but if the answer to why they searched in a certain manner implicates attorney-client privilege, they are not

---

[4] Further, as of July 13, 2023 – the date Wal-Mart obtained and produced the videos to Plaintiff "as a courtesy" (Doc. 53 at 5) – the period for taking nonexpert discovery was still open for approximately 35 days, yielding sufficient time for Plaintiff to conduct written discovery of Wal-Mart's witnesses regarding the videos.  *See, e.g.*, *Goins v. Cnty. of Merced*, No. 1:13-cv-01245-DAD-SKO, 2015 WL 9304749, at *4 (E.D. Cal. Dec. 22, 2015) ("Any information now claimed to be missing could have been obtained through written discovery by Mr. Smith following the deposition, as the parties had previously stipulated to extend fact discovery").

5

required to answer."); *In re New Century*, No. CV 07-0931 DDP (FMOx), 2009 WL 10691336, at *5 (C.D. Cal. Dec. 7, 2009) ("Merely gathering documents from third parties does not gloss the documents with an attorney's mental impressions any more that simply sharing documents with an attorney stamps the documents with the imprimatur of attorney-client privilege") (quotation and citation omitted); *In re eBay Seller Antitrust Litig.*, No. C 07-01882 JF (RS), 2007 WL 2852364, at * (N.D. Cal. Oct. 2, 2007) (plaintiffs are "entitled to inquire into the facts as to what the employees receiving the [document retention notices] have done in response; i.e., what efforts they have undertaken to collect and preserve applicable information.").

Accordingly, the Court will order Wal-Mart to serve a sworn response on Plaintiff answering whether Mr. Salas searched for call records between him and Plaintiff. *See In re Facebook Privacy Litigation*, No. 5:10-cv-02389-RMW, 2015 WL 3640518, at *2 (N.D. Cal. June 11, 2015) (ordering party to submit a declaration explaining her search for responsive documents in detail, including, but not limited to, all sources searched and all search parameters used).

**Issue #3:  Wal-Mart's Invocation of Witnesses' Privacy Interests**

At some point prior to her termination by Wal-Mart, Plaintiff was directed to write a statement relevant to an internal ethics investigation involving Mr. Salas and Ms. Failla (the two Wal-Mart employees involved in the decision to terminate Plaintiff).  (Doc. 53 at 2).  During her deposition in the instant case, Plaintiff reportedly testified that she learned from others at Wal-Mart that Salas believed she had "snitched on him" and caused the ethics investigation.  When counsel for Plaintiff asked Mr. Salas and another Wal-Mart witness about the investigation during depositions, counsel for Wal-Mart instructed the deponents not to answer, citing their privacy interests as grounds.  (*Id.* at 8).  Plaintiff argues that information concerning the investigation is relevant and that she should be permitted to inquire about the facts as they may bear on Wal-Mart's decision to terminate her.

In a case such as this predicated solely on diversity jurisdiction, the state law of privilege applies.  *See Lite On It Corp. v. Toshiba Corp.*, No. CV 07-04758-SGL(AJWx), 2009 WL 10669760, at *3 (C.D. Cal. Mar. 4, 2009) (citing Weinstein's Fed. Evid. § 501.02[2][b] at 501-

11); Fed. R. Evid. 501.  Accordingly, this Court looks to authorities interpreting the right to privacy under California state law.

The California Supreme Court's framework for evaluating claims implicating the right to privacy under Article I, Section 1 of the California Constitution involves a balancing test that begins with a three-party inquiry.  First, the claimant must possess a "legally protected privacy interest," such as, for instance, "precluding the dissemination or misuse of sensitive and confidential information."  *Pioneer Elec. (USA), Inc. v. Superior Court*, 40 Cal.4th 360, 370 (2007) (quoting *Hill v. Nat'l Collegiate Athletic Assn*., 7 Cal.4th 1, 35 (1994)). "Though personal identifying information is 'entitled to some privacy protection,' its disclosure is not a serious invasion of privacy, in contrast to the disclosure of 'one's personal medical history or current medical condition nor details regarding one's personal finances or other financial information.'" *Cervantes v. CEMEX, Inc.*, No. 1:12-cv-1932-LJO-JLT, 2014 WL 4104200, at *6 (E.D. Cal. Aug. 18, 2014) (quoting *Pioneer*, 40 Cal.4th at 372).

Second, the person asserting a privacy interest must possess "a reasonable expectation of privacy under the particular circumstances," which is defined as "an objective entitlement founded on broadly based and widely accepted community norms."  *Pioneer*, 40 Cal.4th at 370-71 (quoting *Hill*, 7 Cal.4th at 36-37).  Third and lastly, the alleged invasion of privacy "must be 'serious' in nature, scope, and actual or potential impact to constitute an 'egregious' breach of social norms."  *Id.* at 371 (quoting *Hill*, 7 Cal.4th at 37).

If each of the three parts of this inquiry are shown, "the Court must then balance the privacy interest against the competing disclosure interest."  *Cervantes*, 2014 WL 4104200, *6 (citing *Pioneer*, 40 Cal.4th at 370-71).  In this regard, courts "should consider factors including the purpose of the information sought, the effect that disclosure will have on the affected persons and parties, the nature of the objections urged by the party resisting disclosure[,] and availability of alternative, less intrusive means for obtaining the requested information.'"  *McClure v. Prisoner Transportation Services of America, LLC*, No. 1:18-cv-00176-DAD-SKO, 2020 WL 1182653, at *3 (E.D. Cal. Mar. 12, 2020) (internal quotation and citation omitted).

To facilitate its undertaking of this balancing test, the Court ordered the parties to submit

the following materials for the Court's *ex parte*, in camera inspection: (1) Plaintiff – a declaration by Plaintiff setting forth detailed information (including dates, names and titles of witnesses/speakers) relating to her allegation that she was told by co-workers that Salas believed she had "snitched" on him; (2) Defendant – a declaration by a knowledgeable party witness setting forth detailed information (including dates, names and titles of witnesses/speakers) about the sensitive and confidential investigation and its relationship to Plaintiff (if any).  Doc. 55.

The Court has received and considered the materials submitted by both parties.[5] Plaintiff's submission largely is consistent with her assertion in the parties' Joint Report Regarding Discovery Dispute (Doc. 53) that, when she returned from medical leave in September 2021, an identified coworker (Coworker #1) told her she overhead Salas complaining that Plaintiff had "snitched on him."  Plaintiff also attests that, to the best of her recollection, she reported to another identified coworker (Coworker #2) that Coworker #1 had warned her Salas falsely believed she snitched on Salas.

Despite the Court's order that Defendant similarly submit a declaration by a knowledgeable party addressing details of the investigation – and, importantly, any relationship between the investigation and Plaintiff – Defendant's submission instead consists of a 52-page report generated (according to the document) on July 18, 2023, titled "Ethics Case Management Details."  To the best of the Court's understanding, the document catalogs communications between the reporting parties and Wal-Mart's staff involved in the investigation.  Although not clear, it appears from the document that the investigation is concluded.  Plaintiff's name does not appear in the document.  The document does not contain or indicate whether any statements were taken by Mr. Salas in connection with the investigation.

The Court concludes based on its consideration of the parties' submissions that Wal-Mart

---

[5] The Court has reviewed the parties' submissions in light of the factors set forth in *Oregonian Publ'g Co. v. U.S. Dist. Court for Dist. of Or.*, 920 F.2d 1462 (9th Cir. 1990).  The Court finds that sealing those documents serves the compelling interest of protecting sensitive, personal information obtained through confidential investigation.  The Court further finds that, in the absence of closure, the compelling interests would be harmed.  The Court further finds that there are no additional alternatives to sealing the documents that would adequately protect the compelling interests.

has some privacy interest in protecting from disclosure details of its internal ethics investigations. To ensure it can effectively investigate allegations implicating employee ethics and to encourage responsible reporting, Wal-Mart must provide its employees some assurance that information volunteered by victims and witnesses will remain confidential and be protected. California courts recognize and term this interest "informational privacy." *Hill*, 7 Cal.4th at 35. This interest is objectively reasonable considering "widely accepted community norms" – because ethics investigations typically involve sensitive and private concerns, people generally accept that details of such investigations remain confidential. The Court also concludes that disclosing certain details and/or documents relating to the investigation would constitute a serious breach of those community norms. The subject matter of the investigation is sensitive and unbridled disclosure of the details of that investigation likely would result in more than de minimis embarrassment and reputational harm to people named in the document.

  The Court now balances Wal-Mart's privacy interest "against the competing disclosure interest." *Cervantes*, 2014 WL 4104200, *6 (citing *Pioneer*, 40 Cal.4th at 370-71). Plaintiff suggests in the parties' Joint Report Regarding Discovery Dispute that her disclosure interest in the ethics investigation is to discover whether, in fact, Mr. Salas' reported perception that Plaintiff "snitched on him" yielded animosity and motivated in any respect Mr. Salas' involvement in and support for terminating Plaintiff. (Doc. 53 at 4).

  The Court concludes that information tending to suggest Mr. Salas – one of the people reportedly responsible for the decision to terminate Plaintiff's employment – harbored any ill-will towards Plaintiff based on his perception (whether accurate or baseless) that Plaintiff "snitched" on him in connection with the investigation would be relevant to the action under Fed. R. Civ. P. 26(b)(1). *See Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (relevancy is broadly defined to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case). The Court further concludes that Wal-Mart's right to privacy in the details of its internal ethics investigations of employees is not absolute and a limited disclosure of such information would not constitute a serious invasion of privacy here.

Based on the documents Wal-Mart lodged with the Court for ex parte, in camera inspection, it does not appear that Wal-Mart initiated its ethics investigation based on any information from either Plaintiff or Mr. Salas. However, as set forth above, Wal-Mart did not comply with the Court's direction either to submit a declaration signed by a witness knowledgeable about the investigation or to explain whether and the extent to which Plaintiff was involved in the investigation.

Accordingly, the Court will order Wal-Mart to provide limited discovery on the narrow issue of whether its ethics investigation revealed any information indicating (whether accurately or not) either that Plaintiff directly or indirectly prompted the commencement of the investigation or that Mr. Salas believed Plaintiff was responsible in any respect for Wal-Mart's undertaking of the ethics investigation. Given the Court-ordered stipulated protective order in this case, the Court will require Wal-Mart to produce to Plaintiff any documents responsive to this limited category of discovery that shall be governed by the protective order.

The Court believes the parties are best situated to confer and agree upon the most appropriate and efficient mechanism for satisfying this discovery order. The Court offers that a knowledgeable Wal-Mart witness could satisfy this discovery order with a sworn/verified supplemental interrogatory response directed towards the discovery category identified above.

**Conclusion and Order**

For the foregoing reasons and based on the discussion had during the informal discovery dispute conference, it is HEREBY ORDERED:

1. Plaintiff's request to reopen the depositions of Mr. Salas and Ms. Failla is DENIED;

2. <u>Within 21 days of the date of this Order</u>, Wal-Mart SHALL procure and produce to Plaintiff a signed and sworn declaration in which Mr. Salas attests whether he searched for call records between him and Plaintiff during the relevant time period.

3. <u>Within 21 days of the date of this Order</u>, Wal-Mart SHALL provide discovery on the issue of whether its ethics investigation of Mr. Salas and Ms. Failla revealed any information indicating either that Plaintiff directly or indirectly prompted the commencement of the investigation or that Mr. Salas believed Plaintiff was responsible in any respect for Wal-Mart's

undertaking of the ethics investigation.

    a. Wal-Mart SHALL produce to Plaintiff all documents indicating either that Plaintiff directly or indirectly prompted the commencement of the investigation or that Mr. Salas believed Plaintiff was responsible in any respect for Wal-Mart's undertaking of the ethics investigation.  All such documents produced shall be governed by the protective order (Doc. 34).

    4. Pursuant to Local Rule 141(b) it is FURTHER ORDERED that documents lodged with the Court via email from counsel for the parties dated August 23 and August 24, 2023, shall be SEALED until further order of this Court.

The Court will lodge the documents to be sealed with the Clerk of Court contemporaneously with the filing of this Order.

IT IS SO ORDERED.

Dated:   **August 30, 2023**

UNITED STATES MAGISTRATE JUDGE

11